UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Diana Martell,

      Plaintiff,

      v.                                      Civil Action No. 2:12-CV-152

Commissioner of Social Security,

      Defendant.

## REPORT AND RECOMMENDATION
(Docs. 6, 11)

Plaintiff Diana Martell brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits. Pending before the Court are Martell's motion to reverse the Commissioner's decision (Doc. 6), and the Commissioner's motion to affirm the same (Doc. 11). For the reasons stated below, I recommend that Martell's motion be GRANTED, the Commissioner's motion be DENIED, and the matter be REMANDED for further proceedings and a new decision.

## Background

Martell was forty years old on her alleged disability onset date of January 1, 2006. She has a high school education and has taken community college courses. She has a sporadic work history as an automobile parts assembler, a factory worker, a housekeeper, a prep cook, and a maker of wooden floral picks. (AR 183-87.)

Martell has a troubled family history. Her brother sexually molested her when she was in her teens, and she has frequent memories of the abuse. (AR 302-04, 355.) She does not have a good relationship with her mother. (AR 354-55.) Her husband of approximately ten years, who was almost thirty years her senior, passed away on her birthday in 2008; she became very depressed thereafter and has nightmares relating to his death. (AR 49-50, 302, 354-55, 767.) She has six stepchildren and fourteen stepgrandchildren. (AR 302, 767.)

Martell is morbidly obese, and suffers from multiple physical problems, including bilateral carpal tunnel syndrome; back, knee, and foot pain; possible thyroid issues; and migraine headaches. (AR 49, 452, 489, 517.) Several medical providers have recommended that she lose weight to alleviate her symptoms, particularly her foot and back pain. (*See, e.g.*, AR 370, 452, 489, 757.) Martell also has emotional problems, causing anxiety and panic attacks; she claims to be nervous and scared around new people, and thus tries to avoid socializing. (AR 46-47, 50, 196, 237, 575.) On a typical day, Martell cares for her pets (two cats and three birds), goes for a walk, does crafts, watches television, visits with neighbors, does housework, and cooks simple meals. (AR 31-32, 190-96, 214-21, 233-42.) She claims that these activities take her a long time to complete, and she is in constant pain. (AR 217, 235, 241.)

In September 2009, Martell filed an application for disability insurance benefits, alleging that she became unable to work on January 1, 2006 due to anxiety, foot pain, and arthritis in her ankle. (AR 172.) She stated that her physical conditions limited her ability to stand and walk, and her anxiety caused major mood swings and inability to be

around large crowds. (*Id.*) Martell's application was denied initially and upon reconsideration, and she timely requested an administrative hearing. The hearing was conducted on May 27, 2011 by Administrative Law Judge ("ALJ") Thomas Merrill. (AR 26-61.) Martell appeared and testified, and was represented by an attorney. In addition, a vocational expert ("VE") appeared and testified at the hearing. On August 18, 2011, the ALJ issued a decision finding that Martell was not disabled from her alleged onset date through the date of the decision. (AR 12-24.) Thereafter, the Appeals Council denied Martell's request for review, rendering the ALJ's decision the final decision of the Commissioner. (AR 1-3.) Having exhausted her administrative remedies, Martell filed the Complaint in this action on July 6, 2012. (Doc. 3.)

## **ALJ Decision**

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

3

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity ("RFC"), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, ALJ Merrill first determined that Martell had not engaged in substantial gainful activity since her alleged onset date of January 1, 2006. (AR 15.) At step two, the ALJ found that Martell had the following severe impairments: bilateral carpal tunnel syndrome, degenerative joint disease, degenerative disc disease, obesity, adjustment disorder, posttraumatic stress disorder, and generalized anxiety disorder. (*Id.*) At step three, the ALJ found that none of Martell's impairments, alone or in combination, met or medically equaled a listed impairment. (AR 15-16.)

Next, the ALJ determined that Martell had the following RFC:

> [Martell can] lift twenty pounds occasionally and ten pounds frequently. She can sit for six hours out of an eight-hour workday, and stand and/or walk for four hours out of an eight-hour workday. [Martell's] ability to use her hands and feet to operate foot controls, push and pull is unlimited. [Martell] can never climb ladders. She can occasionally perform all other postural activities. She must avoid even moderate exposure to hazards such as climbing ladders and areas requiring flexibility and agility. [Martell] can retain, understand[,] and remember one to three step tasks. She can sustain concentration, persistence[,] and pace for two-hour periods over a typical workday and workweek. She is limited in her ability to engage in contact with the general public and intense contact with coworkers and supervisors. She retains the ability for routine social interactions.

(AR 17.) Given this RFC, and based on testimony from the VE, the ALJ found that Martell was capable of performing her past relevant work as an "assembler." (AR 23.) Alternatively, the ALJ determined, again based on testimony from the VE, that there are other jobs existing in significant numbers in the national economy that Martell could do, including the jobs of food checker, food and beverage clerk, film touch-up inspector, and assembler. (AR 24-25.) The ALJ concluded that Martell had not been under a disability from the alleged onset date of January 1, 2006 through the date of the decision. (AR 25.)

## **Standard of Review**

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but

cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In reviewing a Commissioner's disability decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). A court's factual review of the Commissioner's decision is limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the fact[-]finder."). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305. In its deliberations, the court should consider that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

I. **The ALJ Erred in His Assessment of Kirke McVay's Opinions.**

Psychologist Kirke McVay, M.A., regularly treated Martell's anxiety and other mental problems from approximately September 2010 through May 2011. (AR 683-88,

6

766-68.) McVay's treatment notes are detailed, consistently noting Martell's history of social phobia, anxiety, panic attacks, sleeping problems, and nightmares. (*Id.*) On May 12, 2011, McVay completed a Medical Source Statement regarding Martell's ability to do mental work-related activities. (AR 655-57.) Therein, McVay opined that, due to her major depressive disorder, Martell was markedly limited in her ability to make judgments on complex work-related decisions, and moderately limited in her ability to understand and remember simple instructions, carry out complex instructions, and make judgments on complex work-related decisions. (AR 655.) McVay supported this assessment by referring to his clinical interview of Martell and to Martell's "Beck's Depression Inventory score of 45" (*id.*), which he stated demonstrated "[e]xtreme depression" (AR 683). McVay further opined that, due to her social phobia, Martell was markedly limited in her ability to interact appropriately with the public, supervisors, and coworkers; and to respond appropriately to usual work situations and changes in a routine work setting. (AR 656.) McVay noted that Martell had nightmares and other sleep problems, causing "daytime sleepiness" and "hypnogogic hallucinations." (*Id.*) He stated that Martell "may have narcolepsy." (*Id.*)

The ALJ gave "limited weight" to McVay's opinions, stating that McVay "is not an accepted medical source," and that McVay's opinions "are not supported by his records, which reflect that [Martell] is functioning fairly well despite many situational stressors." (AR 22.) Martell argues that this analysis was inadequate, and I agree.

The ALJ clearly erred in stating that McVay was not an "accept[able] medical source." (AR 22.) In his evaluation, McVay identified himself as "Kirke McVay M.A.

7

Psychologist – Master." (AR 657.) The regulations define "acceptable medical sources" to include "[l]icensed or certified psychologists." 20 C.F.R. § 404.1513(a)(2). The Social Security Administration's Program Operations Manual System ("POMS") specifies that an individual is considered to be an "acceptable medical source," without further verification, if the individual "[i]s in Vermont . . . and shows as all or part of his/her title 'M.A., psychologist.'" POMS DI 22505.004(A)(3), *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0422505004 (last visited Mar. 11, 2013).

The Commissioner argues that, even assuming the ALJ erred in stating McVay was not an acceptable medical source, the error was harmless because the ALJ provided proper reasons for discounting the reliability of McVay's opinions. (Doc. 11-1 at 7.) But the analysis is not as straightforward as the Commissioner suggests; and I find that, had the ALJ properly considered McVay an "acceptable medical source," he would have analyzed McVay's opinions differently, under the exacting standards of the "treating physician rule." That rule states that a treating physician's opinion on the nature and severity of a claimant's condition is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *see Schisler v. Sullivan*, 3 F.3d 563, 567-69 (2d Cir. 1993). Even when a treating physician's opinion is not given controlling weight, the opinion is still entitled to some weight because a treating physician is "likely to be the medical professional[] most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence . . . ." 20 C.F.R. §

404.1527(c)(2). When the ALJ decides to afford less than controlling weight to a treating physician's opinion, the ALJ must consider the regulatory factors—including but not limited to, the length of the treatment relationship, the frequency of examination, and whether the treating physician's opinion is consistent with the record as a whole—in determining how much weight is appropriate. *Richardson v. Barnhart*, 443 F. Supp. 2d 411, 417 (W.D.N.Y. 2006) (citing *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000); 20 C.F.R. § 404.1527(d)(2)-(6)); *see* 20 C.F.R. § 404.1527(d). After considering these factors, the ALJ must "give good reasons" for the weight afforded to the treating source's opinion. *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks and citation omitted).

Here, not only did the ALJ fail to recognize that McVay was an acceptable medical source and thus that his opinions should have been analyzed under the treating physician rule, he also failed to consider several relevant regulatory factors in analyzing McVay's opinions, including the length of McVay's treatment relationship with Martell, the frequency of examination, and whether McVay's opinions were consistent with the record as a whole. The ALJ gave only two reasons for affording limited weight to McVay's opinions, and neither of those reasons constitutes a "good reason," as required by the regulations and case law. The first reason—that McVay was not an acceptable medical source—was clearly wrong, as discussed above. The second reason—that McVay's opinions were not supported by his own records, which the ALJ stated "reflect that [Martell] was functioning fairly well despite many situational stressors" (AR 22)—is not supported by substantial evidence, as discussed below.

9

McVay's September 2010 treatment notes indicate that Martell had a history of panic attacks, anxiety, and feelings of hopelessness and uselessness; that Martell's panic attacks consisted of racing thoughts, scared feelings, sweating, and a profound need to escape, followed by nausea and vomiting; that Martell had a social phobia resulting in her avoiding going out; and that Martell had repeating nightmares several times a week which involved either being molested by her brother or her husband's death. (AR 683.) The notes objectively state that Martell's psychomotor abilities were retarded, her affect was flat, and her score on the Beck's Depression Inventory test indicated "[e]xtreme depression." (*Id.*) Other notes from McVay's treatment of Martell indicate that she was having "classic anxiety dreams" (AR 684); she had "anxiety attacks" while doing crafts (AR 685); and she had a "major anxiety attack while in the middle of a conversation w[ith] someone . . . [resulting in her] vomiting" (AR 687). These records do not portray an individual who was "functioning fairly well," as the ALJ stated. (AR 22.)

In sum, the ALJ erred in stating that McVay was not an acceptable medical source. This error was not harmless, given that: (a) the ALJ's mistaken belief that McVay was not an acceptable medical source was the first of only two reasons provided by the ALJ for affording limited weight to McVay's opinions; and (b) the other reason provided by the ALJ for affording limited weight to McVay's opinions—that those opinions were not supported by McVay's own records—was not supported by substantial evidence and thus did not constitute a "good reason." The Second Circuit has consistently held that an ALJ's failure to provide good reasons for not crediting the opinion of a treating physician is a ground for remand. *See Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998); *Halloran*

*v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion and we will continue remanding when we encounter opinions from ALJ[]s that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion."). I therefore recommend that this matter be remanded so the ALJ may properly analyze McVay's opinions in accordance with the treating physician rule and other applicable regulatory and case law.

## II. The ALJ Erred in Finding Martell Could Return to Her Past Relevant Work.

The ALJ's failure to properly analyze McVay's opinions likely affected all aspects of the ALJ's decision. Thus, the Court need not address Martell's remaining arguments, as the ALJ will be required to redo the entire sequential evaluation on remand. In an effort to provide guidance on remand, however, I note that the ALJ also erred in his step-four finding that Martell could return to her past relevant work as an assembler, "as [the job was] actually and generally performed." (AR 23.) Martell correctly argues that the ALJ's RFC determination does not support a finding that Martell could perform the assembler job; and the ALJ erred in failing to ask the VE about apparent inconsistencies between her testimony regarding the assembler job and (a) the ALJ's RFC determination and (b) the assembler job's definition in the Dictionary of Occupational Titles ("DOT").[1]

---

[1] Although Martell identified four jobs in her Work History Report (AR 183-87), the VE testified that Martell had only two prior jobs. (AR 52.) Moreover, the ALJ discussed only the assembler job at step four of his decision. (AR 23-24.) Given these facts, I address only the assembler job here, but note that, on remand, the ALJ should consider at step four each job identified in Martell's Work History Report, at least to summarily find that Martell could not perform them, before proceeding to step five.

11

The regulations provide that, if a claimant can return to her past relevant work, "either as the claimant actually performed it or as generally performed in the national economy," then the claimant is not disabled. 20 C.F.R. § 404.1560(b)(2). It is the claimant's burden to show that she is incapable of performing her "past relevant work," *see, e.g.*, *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986), which the regulations define as "work that [the claimant] ha[s] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it," 20 C.F.R. § 404.1560(b)(1). The test for actual performance of a claimant's past relevant work is "[w]hether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job *as . . . she actually performed it*." SSR 82-61, 1982 WL 31387, at *1 (1982) (emphasis added). The test for general performance of a claimant's past relevant work is "[w]hether the claimant retains the capacity to perform the functional demands and job duties of the job *as ordinarily required by employers throughout the national economy*." *Id.* at *2 (emphasis added). ALJs may rely on job descriptions contained in the DOT to define how jobs are "*usually* performed in the national economy." *Id.*

Martell stated in her Work History Report that her job as an auto-parts assembler (which she described as requiring her to "put together car shaft[] parts") required lifting between twenty and fifty pounds occasionally and twenty-five pounds frequently. (AR 184.) She also stated that the assembler job required her to stand and walk for eight hours in an eight-hour workday. (*Id.*) As part of his RFC determination, the ALJ found that Martell could lift only twenty pounds occasionally and ten pounds frequently, and

could stand or walk for only four hours in an eight-hour workday. (AR 17.) Therefore, the ALJ's RFC determination does not support the ALJ's finding that Martell could perform her past relevant work as an assembler as she actually performed that work. Stated differently, Martell's actual performance of the assembler job was more demanding than the ALJ's RFC would allow.

Likewise, the ALJ's RFC determination does not support the ALJ's finding (AR 23) or the VE's testimony (AR 54) that Martell could perform her assembler job as that job was generally performed. According to the VE, the assembler job was a "light, unskilled" job. (AR 52.) The regulations define "light work" to require "the ability to lift up to [twenty] pounds occasionally, lift [ten] pounds frequently, *stand and walk for up to [six] hours a day*, and sit for up to two hours." *Mancuso v. Astrue*, 361 F. App'x 176, 178 (2d Cir. 2010) (emphasis added) (citing 20 C.F.R. § 404.1567(b)); *see also Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) ("light work requires intermittently standing or walking for a total of approximately 6 hours of an 8-hour workday"); SSR 83-10, 1983 WL 31251, at *5-6 (1983). Thus, according to the VE, general performance of the assembler job requires standing and walking for up to six hours a day. As stated above, however, the ALJ's RFC determination limited Martell to standing and/or walking for only *four* hours a day. (AR 17.) The ALJ should have recognized this apparent conflict, and either asked the VE to explain it or declined to adopt the VE's testimony.[2] *See* SSR

---

[2] Although not addressed by either party, the VE's testimony that the automobile assembler job was a "light, unskilled" job (AR 52) also appears to conflict with the DOT, which provides that the job of "ASSEMBLER, MOTOR VEHICLE" is a "*Medium Work*" job, requiring an ability to lift up to fifty pounds occasionally and up to twenty-five pounds frequently. U.S. Dep't of Labor, *Dictionary of Occupational Titles*, DICOT 806.684-010, 1991 WL 681470 (G.P.O.) (4th ed. 1991) (emphasis added).

13

00-4p , 2000 WL 1898704, at *2 (Dec. 4, 2000) ("[w]hen there is an apparent unresolved conflict between VE . . . evidence and the DOT, the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence"). Although the Second Circuit has recognized a "flexible" substantial evidence approach to disability proceedings and held that ALJs are not required to state reasons for accepting the testimony of VEs, *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012), in this case, the ALJ adopted VE testimony that was clearly inconsistent with the ALJ's RFC determination and the DOT. Thus, an explanation—either by the VE at the administrative hearing or by the ALJ in his decision—was required.

Finally, it should be noted that the ALJ's step-four error was likely harmless, given that the ALJ proceeded to step five of the sequential evaluation, and Martell makes no specific complaints about that analysis. *See Lindsey v. Astrue*, No. 1:10-cv-00038-JAW, 2011 WL 86567, at *2-3 (D. Me. Jan. 10, 2011) (agreeing with the Tenth Circuit that "it would be impractical and counter-productive" to remand a case solely on the ground that the ALJ's step-four findings were improper, where the ALJ gave proper alternative step-five findings); *Thompson v. Astrue*, No. 1:06-CV-1328, 2010 WL 502868, at *1 (N.D.N.Y. Feb. 9, 2010) ("[A] deficiency in an ALJ's step-four analysis does not require remand if the ALJ subsequently made a correct ruling at step five."), vacated and remanded on other grounds by *Thompson v. Astrue*, 416 F. App'x 96 (2d Cir. 2011). Nonetheless, because remand is required anyway due to the ALJ's failure to properly analyze McVay's opinions, I address this issue so that the ALJ may correct the error on remand by, for example, finding Martell incapable of performing her past

14

relevant work (and again proceeding to step five of his analysis), or asking the VE at another administrative hearing to explain her earlier testimony on the issue.

## **Conclusion**

In making these recommendations, I offer no opinion regarding the substantive merits of Martell's claim that she is disabled under the Social Security Act. I find, however, that the ALJ's decision is based on an erroneous legal standard and is not supported by substantial evidence, particularly with respect to the ALJ's analysis of McVay's opinions. Accordingly, I recommend that Martell's motion (Doc. 6) be GRANTED; the Commissioner's motion (Doc. 11) be DENIED; and the matter be REMANDED for further proceedings and a new decision in accordance with this ruling.

Dated at Burlington, in the District of Vermont, this 22nd day of March, 2013.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).